**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>CELSIUS NETWORK LLC, *et al.*,[1]<br><br>　　　　　　　　　Debtors.<br><br>―――――――――――――<br><br>CELSIUS NETWORK LIMITED and CELSIUS NETWORK LLC (POST-EFFECTIVE DATE DEBTORS),<br><br>　　　　　　　　　Plaintiffs,<br>　　against<br><br>TETHER LIMITED;<br>TETHER HOLDINGS LIMITED;<br>TETHER INTERNATIONAL LIMITED; and<br>TETHER OPERATIONS LIMITED,<br><br>　　　　　　　　　Defendants. | Chapter 11<br><br>Case No. 22-10964 (MG)<br><br>(Jointly Administered)<br><br><br><br>Adv. Proc. No. 24-04018 (MG) |

## REPLY DECLARATION OF JOHN CARRINGTON K.C.

---

[1] The Post-Effective Date Debtors in these chapter 11 cases, along with the last four digits of each Post-Effective Date Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Post-Effective Date Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

I, **JOHN CARRINGTON K.C.**, a national of the Territory of the Virgin Islands (commonly referred to as the "British Virgin Islands" or "BVI") over the age of 18 years, hereby affirm as follows:

1. I am the same person who made a Declaration and Amended Declaration in these proceedings which were filed respectively on November 14, 2024 and January 17, 2025.

2. I have been requested by the Defendants to make this Reply Declaration in response to the Declaration of Paul Anthony Webster K.C. filed on March 11, 2025. I adopt the headings used by Mr. Webster in his Declaration for ease of reference and purely for the convenience of the reader.

3. Capitalised terms below have the meanings attributed to them in my Amended Declaration, or, if the term is not defined in the Amended Declaration, then the meaning attributed to the term in the Webster Declaration. For example, "Celsius" refers to Plaintiff Celsius Network Limited, and "Tether" refers to Defendant Tether Limited.

**Waiver and Implied term**

4. I disagree with the reasoning of Mr. Webster[2] under these headings.

5. My opinion[3] was that the Agreement does not address the situation where Celsius authorises Tether to liquidate so that the courts will need to imply a term into the Agreement to deal with such a situation. Mr. Webster states that is "not completely accurate because the Amendment Agreement had a No Oral Modification Clause which precludes oral amendments to the agreement."[4] That is a non-sequitur. Because the Agreement does not address the situation where Celsius *authorises* a liquidation, there is no existing term to amend. The No Oral Modification term is, therefore, irrelevant. The term with the 10-hour period only puts conditions on Tether's power to liquidate

---

[2] Webster Declaration paragraphs 47- 53
[3] Amended Declaration paragraphs 40-43
[4] Webster Declaration paragraph 52

- 2 -

*unilaterally*, therefore, it is not relevant to the situation here, where Plaintiffs have alleged that Celsius authorised a liquidation.

6. Mr. Webster's declaration also conflates the issue of an amendment, on the one hand, and an implied term or a waiver, on the other. While it may not be necessary for the Court to reach those issues to decide whether Plaintiffs have alleged a breach, that distinction matters under BVI law.

7. Mr. Webster's reliance on decision of the English Supreme Court in **MWB Business Exchange Centres Ltd v Rock Advertising Ltd**[5] is, therefore, misplaced. **MWB Business Exchange** deals only with the issue of whether an oral amendment is effective when the contract has a No Oral Modifications term. That decision noted that, even where such a term exists, estoppel could still prevent a party from refusing to give effect to an oral amendment of the agreement. It did not, however, address at all whether the No Oral Modification clause principle applies to the implication of a term or the waiver of a party's right under the agreement.

8. Where a BVI court implies a term, however, it does not purport to vary or modify the agreement. In **Belize Telecom**,[6] which Mr. Webster agrees is the leading decision on implied terms in the Eastern Caribbean, the JCPC specifically stated: "… *In such a case, it is said that the court implies a term as to what will happen if the event in question occurs. But the implication of the term is not an addition to the instrument. It only spells out what the instrument means*." It follows that the principles on No Oral Modification clauses expressed in **MWB Business Exchange** do not apply to the implication of terms.

9. Issues related to waiver are also distinct from those raised in an amendment. Nothing in the judgments delivered by the Supreme Court in **MWB Business Exchange** suggests that such formality is required where the agreement itself is not being varied i.e. changed or modified (thereby requiring consensus among its parties and consideration) but one party is simply indicating that it is not insisting on a contractual

---

[5] [2018] UKSC 24
[6] [2009] UKPC 10 at paragraph 18

- 3 -

right created for its benefit. Moreover, leading cases on waiver like **Hawkseley v Outram, Heron Garage Properties v Moss and Irvin v Wilson** were not cited to the Supreme Court in **MWB Business Exchange** nor were they discussed in the decision of that court. It is therefore unlikely that a BVI court would conclude that the principle applied in these cases is inconsistent with the decision in **MWB Business Exchange**. In any event, this waiver question is likely academic because the relevant provision simply does not speak to the situation here – an authorised liquidation – so there is nothing that needs to be waived.

**Clause 1.1(e)(14)**

10. I am unable to agree with Mr. Webster's statement[7] that Tether could be barred under the principles of estoppel from asserting a breach of Section 1.1(e)(14) if it had been "aware of Celsius's financial distress[.]" BVI law recognizes various kinds of estoppel at common law and in equity. Mr. Webster does not particularize to which kind of estoppel he seeks to refer, but it is likely that he would have had in mind either estoppel by convention (i.e. the parties operating on an assumed factual or legal situation) or estoppel by representation (i.e. one party making a representation of fact of law intending the other party to rely thereon and on which the other party relied and acted to his detriment). In **Prime Sight Ltd v Lavarello**[8] the JCPC stated "*The doctrine of estoppel by deed overlaps with the doctrines of estoppel by representation and estoppel by convention. The basis of estoppel by representation is that the representor induced the representee to enter into the relevant transaction on the faith of a statement in circumstances which would make it unfair that the representor should go back on the statement. The basis of estoppel by convention is that the parties expressly or impliedly agreed that a certain state of facts of law was to be treated as true for the purposes of the transaction, and that it would be unfair for one or other to resile from the basis on which the transaction had proceeded.*"

---

[7] Webster Declaration paragraph 58
[8] [2013] UKPC 22 at paragraph 29

11. The first point that should be made is that financial distress does not necessarily equate to "insolvency," which is the term used in the Agreement. Secondly, the terms of the agreement do not state that Celsius' representation as to solvency is dependent upon the state of knowledge of Tether so that Celsius is absolved from liability if Tether had the relevant knowledge. Third no allegations are made in the Amended Complaint of any specific words or conduct or failure to act by Tether (when it had a contractual duty to act) which were communicated to Celsius that could give rise to reliance on the part of Celsius to its detriment. The absence of a pleading of communication from the person who is alleged to be estopped is fatal to this cause of action.

12. Assuming the allegations in the Amended Complaint to be true, it is not clear that Tether knew that Celsius was in "financial distress" prior to the pause in withdrawals on June 12, 2022. Indeed, paragraph 56 of the Amended Complaint alleges that Tether "released" Bitcoin back to Celsius on Jun 6, 2022, which is inconsistent with a claim that Tether knew Celsius to be insolvent. But even if Tether had been "aware of Celsius's financial distress[,]"[9] that still would not be sufficient under BVI law to give rise to an arguable defence of estoppel to a claim by Tether of a right to liquidate under Section 1.1(e)(14). The Amended Complaint therefore does not state any facts from which a BVI court can reach a finding that estoppel may operate in favour of Celsius in relation to any liquidation of assets under Section 1.1(e)(14). Mr. Webster also does not provide any reasoning by which he could reach to such a conclusion.

**Good faith**

13. At paragraph 67 of his Declaration, Mr. Webster's conclusion is that Tether acted in breach of the **Braganza** duty in its liquidation of the collateral. However, this conclusion is based on the premises of (i) Tether acting in breach of the 10-hour provision; and (ii) Tether's sale to itself of the Collateral.

14. There are two difficulties with the first part of this argument. Firstly, if, as Mr. Webster has suggested, Tether acted in breach of the express provision (Section 1.1(b)(4)) in

---

[9] Webster Declaration paragraph 58

selling the Collateral within the 10-hour period, there is no need for a court to have recourse to an implied term of good faith (and the breach thereof). An implied term is only needed when a situation is not covered by an express term of the contract. In **Belize Telecom** the JCPC stated:[10] "*The question of implication arises when the instrument does not expressly provide for what is to happen when some event occurs*[.]" Secondly, even if a court were to imply a duty to act in good faith, it will need, in construing the Agreement, to determine the extent of that duty and an agreement would not be construed such that a breach of a specific term would also constitute a breach of a good faith term. In **Mid Essex Hospital Services NHS Trust v. Compass Group UK and Ireland Ltd.**,[11] where the court was construing an express term to cooperate in good faith, Beatson LJ stated: "*The contract in the present case is a detailed one which makes specific provision for a number of particular eventualities. The specific provisions include clauses 5.8, 6.3 and 6.5. In a situation where a contract makes such specific provision, in my judgment care must be taken not to construe a general and potentially open-ended obligation such as an obligation to "co-operate" or "to act in good faith" as covering the same ground as other, more specific, provisions, lest it cut across those more specific provisions and any limitations in them*."

15. With respect to the second premise, as Mr. Webster accepts that there is authority from the BVI's highest court[12] that an equitable mortgagee may sell the collateral to himself, it is difficult to follow his reasoning that this action is unreasonable or arbitrary and so contrary to the **Braganza** principle. For the reasons set out at paragraph 83 of my Amended Declaration, I do not agree with his conclusion.

**Duty of equitable mortgagee**

16. I do not agree with the conclusion expressed at paragraph 73 of Mr. Webster's Declaration that "the trial court will have to decide if it was reasonable in all the circumstances for Tether to have proceeded and disposed of the Collateral in the way

---

[10] [2009] UKPC 10 at paragraph 17
[11] [2013] EWCA Civ 200 at paragraph 154
[12] Webster Declaration paragraph 71

that it did." As the decision in **Meftah v Lloyds TSB Bank plc**,[13] on which Mr. Webster relies, states, the duty owed by the equitable mortgagee is to "obtain the true market value or the best price reasonably available at the time [of sale]," which is within his discretion, and that a mortgagee is "not [to be] adjudged to be in default unless [he is] <u>plainly</u> on the wrong side of the line" (*emphasis mine*).

17. Mr. Webster also does not address Plaintiffs' allegations at paragraphs 75-77 of the Amended Complaint to the effect that Tether was providing quotes for the sale of the Collateral throughout the liquidation process and that Celsius declined to accept some of the quoted prices. The reasonable inference that can be drawn from these allegations is that it was Celsius that approved, or at the very least had the opportunity to approve, sales at the various prices throughout the liquidation process. Celsius therefore cannot now complain these prices were not the best prices reasonably obtainable at the relevant time.

18. The Amended Complaint does not allege that Tether acted in breach of this duty, nor does it allege that there was cause to conclude reasonably that the market was expected to go back up in the short term.

19. It is therefore difficult to understand how Mr. Webster could have arrived at his conclusion that "Celsius has a good argument that no reasonable person would have sold the Collateral in the manner that Tether allegedly did."[14]  In support of this conclusion Mr. Webster cross-references paragraph 68 of his declaration, but that paragraph references only allegations that Tether purportedly breached the 10-hour waiting period set forth in Section 1.1(b)(4) of the Amended Token Agreement and that Tether held on to "at least some of the Collateral in its related entities."  Neither of these allegations establishes a breach of any relevant implied duty under BVI law. As discussed at paragraph 14 (above), an implied term cannot be duplicative of a specific contract term, and, as discussed in my prior declaration,[15] BVI law is clear that simply

---

[13] [2001] 2 AER (Comm) 741 at 1
[14] Webster Declaration paragraph 73
[15] Amended Declaration paragraph 95

alleging that a transaction was not done at arm's length is insufficient to show a breach of an implied duty.

## DECLARATION

20. I confirm that insofar as the facts stated in my declaration are within my own knowledge, I have made clear they are and I believe them to be correct, and that the opinions I have expressed represent my accurate and complete professional opinion.

21. I also confirm that in preparing this declaration, I am aware that my primary duty is to the Court and not the persons from whom I have received my instruction or by whom I am paid.

22. I declare on this 10th day of April, 2025, under the penalties of perjury under the laws of the United States, which may include a fine or imprisonment, that the foregoing is true and correct, and I understand that this document may be filed in an action or proceeding in a court of law.

Dated: April 10, 2025
British Virgin Islands

JOHN CARRINGTON K.C.